In the Matter of the ESTATE of Daniel James NEWELL, Deceased, the Peru Trust Company, Executor.

No. 2-1278A427.

Court of Appeals of Indiana, Fourth District.

July 28, 1980.

Rehearing Denied Sept. 24, 1980.

Theodore L. Sendak, Atty. Gen., Wallace T. Gray, Deputy Atty. Gen., Indianapolis, for appellant.

James S. Telfer, Ice, Miller, Donadio & Ryan, Indianapolis, James F. Volpert, Peru, for appellee.

CHIPMAN, Judge.

This is an action brought by the Indiana Department of State Revenue, Inheritance Tax Division (Department) against the estate of Daniel James Newell (Estate) in which the Department petitioned the court to redetermine the amount of inheritance tax due and owing from the transfer of assets of the Estate. The Peru Trust Co. (Executor) opposed the Department. After a hearing, the trial court found the amount of tax originally assessed was correct and entered judgment accordingly. The Department appeals, raising the following issues for our review:

1) whether the trial court erred in determining the manner by which the assets of the Estate would most probably be distributed, and

2) whether the trial court erred in determining the date upon which interests in the Estate were to be valued.

Reversed.

## FACTS

The decedent, Daniel Newell, died testate on May 23, 1972. Item V of his will established a testamentary trust in favor of his widow, Lavonne Newell, which provided:

*ITEM FIVE.* I give, devise and bequeath all of the rest and residue of my

estate, whether such property be real, personal or mixed, of whatever kind or character and wheresoever situated, to THE PERU TRUST COMPANY, Peru, Indiana, as TRUSTEE for the benefit of my wife, LAVONNE NEWELL, for the remainder of her natural life. The terms of the trust shall be as follows:

1. I direct that the administration of the trust be carried out under the supervision of the Board Chairman, Assistant Board Chairman, the President, and the Executive Committee of said institution and that said group, serving as a committee, act as the managers of this trust and the decisions of any two of the above-named officers plus the Executive Committee shall control the trust assets. I specifically require as a condition of the trust that they pass on all investments PRIOR to the time the investments are made.

2. Said trustee, acting through said group, shall have authority to pay to my wife, Lavonne Newell, any and all sums that she may request of them for her care, upkeep, pleasure, and any other requirements that she may call to the attention of the trustees, it being my desire that she be able to enjoy life to its fullest and that none of her needs, from a financial standpoint, remain unsatisfied. I further authorize the trustee to use any or all of the corpus of the trust or the income derived from the various investments which I have made at the time of my death, or which may be made by the trustees.

3. I specifically authorize my wife, LAVONNE NEWELL, to remove the trustee from its position of trust in the event, in her sound judgment, she decides that my intent to care for her financial needs are not being fulfilled. In such event, she may select another financial institution as trustee to carry out the intent of this trust.[1]

In a letter to the Peru Trust Co., dated February 16, 1973, Mrs. Newell endeavored to disclaim or renounce part of her interest in the trust created by her husband. The disclaimer stated in pertinent part:

"I hereby irrevocably disclaim my power under said will and trust to request at any time from you or from any successor trustee any sums in excess of the sums necessary for my care, support and maintenance in the manner and style of living to which I am accustomed.

/s/ Lavonne Newell
Lavonne Newell"

Also sent to the Peru Trust Company was a Request for Sums for Support, signed by Mrs. Newell and dated February 16, 1973. This request stated:

"I have determined that in the past and for the foreseeable future the cost of my care, support and maintenance in the manner and style of living to which I am accustomed is One Thousand Dollars ($1,000.00) per month.

I hereby request that you pay to me each month until further notice the sum of $1,000.00 for my care, support and maintenance in the manner and style of living to which I am accustomed.

/s/ Lavonne Newell
Lavonne Newell"

On September 24, 1973, the Executor filed a schedule of property for inheritance tax appraisement. After allowing for certain deductions, the Executor determined the value of the residue of the estate to be $459,522.14. The Executor estimated Mrs. Newell's interest in the residue, as a benefi-

---

1. Item five of the decedent's will provided that upon the death of Lavonne Newell, the trust was to terminate and the corpus was to be divided and distributed as follows: one-fourth was to become the absolute property of the St. Charles Catholic Church of Peru, Indiana, one-fourth was to be placed in trust for the benefit of the Evangelical United Brethren Church of Peru, Indiana, one-fourth was to be placed in trust for the benefit of the decedent's brother and nephew, and one-fourth was to be placed in trust to finance the education of certain Miami County high school students.

ciary of the testamentary trust, to be $111,-371.49.[2]

The trial court issued its original order determining the value of the estate and amount of inheritance tax due on November 20, 1973. The court found Mrs. Newell had an interest of $223,666.77 in the estate, with $6,046.67 due in taxes after appropriate exemptions. The figure $223,666.77 was the sum of Mrs. Newell's interest in the residue or trust ($111,371.49) plus the value of property she held jointly with her husband ($112,295.28) at the date of his death.

Subsequently, the Department petitioned the court to redetermine the amount of inheritance tax due upon interests passing to Mrs. Newell under the testamentary trust. After a hearing, the Department's petition was denied, and this appeal followed.

## I. PROBABLE DISTRIBUTION OF TRUST ASSETS TO LAVONNE NEWELL

■ The Department argues the lower court erroneously determined Lavonne Newell's interest in the testamentary trust to be only $111,371.49. Instead, the Department contends the value of all the trust property, i. e., $459,522.14, should have been taxed to the decedent's wife as representing her beneficial interest in the trust property. In support of this argument, the Department argues Mrs. Newell's attempted disclaimer was not timely submitted to the trustee, and therefore, was of no effect. The Department further submits that absent an effective disclaimer, Mrs. Newell has the unlimited right to request from the trustee any sums she desires for any reason, the power to encroach upon the trust corpus, and the power to remove the trustee whenever she so desires. Therefore, argues the Department, the value of all the trust property was effectively transferred to the decedent's wife and should be taxed accord-

ingly, without regard to the probable distribution of trust assets.

In response, the Executor argues the trial court never found it necessary to decide whether the renunciation filed by Mrs. Newell was effective; instead, the court merely heard evidence as to Mrs. Newell's financial status and then, pursuant to IC 1971, 6-4-1-5, determined the manner by which "the property in question will most probably be distributed." *Id.* We hold the trial court erred in valuing Mrs. Newell's interest in the testamentary trust.

The statutory provision relied upon by the trial court in valuing Mrs. Newell's interest in the trust was IC 6-4-1-5 (since repealed). This provision speaks to the problem of valuing contingent or limited interests:

"The value of every future and contingent or limited estate, income, interest or annuity for any life or lives in being shall, so far as possible, be determined by the rule, method and standard of mortality and of values set forth in the Actuarial Tables currently in use by the United States internal revenue service for estate tax purposes.

.      .      .      .      .

If it is impossible to compute the present value of any of the property transferred, or of any interest therein, or if the tax cannot be determined because of a contingency as to who will take, the Indiana department of state revenue, may enter into an agreement with the taxpayer, to compute the tax upon such terms as may be deemed equitable  .   .   . .

.      .      .      .      .

If the Indiana department of state revenue and the taxpayer have failed to reach an agreement within a reasonable time as to the question of who, because of a contingency, will take and/or their respec-

2. Mrs. Newell's interest in the trust was valued on the basis of an annuity of $1,000 per month as follows:

| | | |
|---|---|---|
| Annuity Factor for female 66 years of age (L.N. born 7/22/06) | | 9.0352 |
| Annual Annuity Amount | × | 12,000.00 |
| | | 108,422.40 |
| Monthly Payment Factor | × | 1.0272 |
| | | 111,371.48 |

tive interests, the question shall be submitted to the court. . . . *The court shall so far as possible resolve the question by determining the manner by which the property in question will most probably be distributed."* (emphasis added) The lower court apparently determined Lavonne Newell had a contingent interest in the trust created by her husband, and concluded that the issue before it was a determination of the amount which most probably would be distributed to her regardless of any renunciation. It is with this conclusion we disagree.

Absent an effective renunciation, Mrs. Newell's interest in the trust was neither limited nor contingent in any real sense. Her interest was not an annuity, nor was it limited to only the income generated by the trust. Paragraph (2) of the trust authorized the trustee to use any or all of the *corpus* of the trust or the income derived from various investments. The trustees were not limited to the payment of sums necessary for the support, health and maintenance of Mrs. Newell in the manner to which she was accustomed. Instead, they were authorized to pay to Mrs. Newell "any and all sums that she may request of them for her care, upkeep, *pleasure* and any other requirements" that she might call to their attention. She was given the absolute power to change trustees if, in her sound judgment, she decides her financial needs are not being filled. The testator expressly stated it was his desire that Mrs. Newell "be able to enjoy life to its fullest and that none of her needs, from a financial standpoint, remain unsatisfied."

Nor was Mrs. Newell's interest contingent upon the happening of an occurrence or event. Indeed, the only "contingency" found in the trust provision is the requirement that Mrs. Newell request the sums she desires before she receives them—hardly the sort of contingent interest referred to in IC 6–4–1–5. In fact, IC 6–4–1–5 provides:

"Where an . . . interest may be divested by the act *or omission* of the transferee, it shall be taxed as if there were no possibility of divesting."

While Mrs. Newell may never actually consume the entire trust corpus, it is unquestionably at her unrestricted disposal. Therefore, we believe the trial court erroneously categorized Mrs. Newell's interest in the trust to be a contingent or limited interest absent an effective renunciation. Accordingly, it is incumbent upon us to determine what effect, if any, Mrs. Newell's alleged disclaimer had upon the valuation of her beneficial interest in the testamentary trust.

Indiana has two statutes which arguably apply to the renunciation by a beneficiary of an interest in a testamentary trust, i. e., IC 1971, 29–1–6–4, a provision in our probate code, and Ind.Code 30–4–2–3, a provision in our trust code. Unfortunately, our legislature has made it less than entirely clear which of the two provisions apply under the facts presented in this case.

The probate renunciation statute was enacted in 1953. On the date of James Newell's death IC 29–1–6–4 provided:

"At anytime within three (3) months after the appointment of the personal representative an *heir* or *devisee* may renounce his succession to all or any portion of the real or personal property of a decedent by filing a renunciation in court, except that no such renunciation shall be effective if it is objected to within thirty (30) days by a creditor of the heir or devisee and if the court finds that the creditor is prejudiced thereby. In case of an effective renunciation by the heir, or devisee, the property affected thereby shall descend as if he had died before the decedent, but the succession so renounced shall be subject to the same Indiana inheritance tax that would have been assessed if there were no renunciation."

The statute makes it quite clear that a timely disclaimer by an heir or devisee will have no effect upon inheritance tax assessment.

The trust renunciation statute, IC 30–4–2–3, was enacted in 1971. On the date of Mr. Newell's death, it provided:

"With respect to acceptance by a beneficiary of his interest in a trust:

(a) Acceptance by the beneficiary of his interest in a trust is presumed.

(b) If the beneficiary intends to disclaim his interest either in whole or in part, he may do so only by delivering a written statement of his disclaimer to the trustee within a reasonable time not to exceed three [3] months after he receives written notice of his interest and that interest has been indefeasibly fixed as to both quality and quantity."

The trust disclaimer provision does not specifically address the issue of inheritance tax consequences flowing from an effective renunciation. However, Ind.Code 30–4–2–4 provides the general rule that:

"If a beneficiary disclaims his interest in the trust estate, the interest will be administered as if he had died prior to the effective date of the writing creating the trust."

The Estate argues the probate disclaimer did not apply because Mrs. Newell was neither an heir nor a devisee, the devisee in this case being the Peru Trust Company as trustee, Mrs. Newell simply having an equitable interest in the trust property. While in a technical sense the trustee as holder of legal title might be considered the "devisee" of the trust property, we believe it is necessary to look to the object or purpose of the probate renunciation provision in order to determine whether a broader meaning was intended. *See Magruder v. Magruder,* (1963) Fla.App., 157 So.2d 86 (applying anti-lapse statute, holding anyone who may benefit under a will is a "devisee" or "legatee" in the generic context of the words); *In re Loring's Estate,* (1946) 29 Cal.2d 423, 175 P.2d 524 (beneficiary of a testamentary trust is a "devisee" or a "legatee" within the meaning of probate code provision). The fundamental rule of statutory interpretation is to ascertain the legislative intent. *Roth v. Local Union No. 1460 of Retail Clerks Union,* (1940) 216 Ind. 363, 24 N.E.2d 280. ·

"Devisee," as the term is used in the probate renunciation provision, refers to the recipient of a testamentary gift of either real or personal property.[3] Our probate renunciation provision was passed with the primary objective of protecting creditors and taxing authorities. The Study Commission comments state:

"This section is based upon Model Probate Code, Sec. 58 . . . . Its primary purpose is to protect creditors and taxing authorities against fraud."

The provision was also written so as to incorporate the common law right of an individual to renounce a gift made in a will. Comments to § 58 of the Model Probate Code state:

"At common law a devisee could renounce but an heir could not as to land. The rule as to devisee is here stated principally because it might otherwise be implied that a statute as to renunciation by the heir repeals the common law rule permitting a devisee to renounce."

■ First, with a primary objective of the probate disclaimer being the protection of taxing authorities from renunciation of testamentary transfers, we are hard pressed to imagine a reason why the legislature would have chosen to exclude beneficiaries of testamentary trusts from its coverage. Furthermore, at the common law, the beneficiary of a testamentary trust had the right to renounce his interest within a reasonable time. *Bogert, Trusts and Estates* § 170 (rev. 2d ed. 1979). As IC 29–1–6–4 was written so as to preclude the inference that the provision repealed the common law right to renounce a gift made in a will, it is reasonable to conclude the term "devisee" was intended to encompass all those who could renounce at common law, including the beneficiary of a testamentary trust. In short, we believe IC 29–1–6–4 was intended to cover all testamentary transfers of real or personal property, including the equitable interest transferred to the beneficiary of a testamentary trust.

**3.** IC 1971 29–1–1–3 states that " 'Devisee' includes legatee", and " 'Devisee', or 'legacy', when used as a noun, means a testamentary disposition of either real or personal property or both [by will]."

■ However, IC 30–4–2–3, our trust code disclaimer, is not limited in its application to inter vivos trusts. The Study Commission Comments state:

"This section makes no distinction between beneficiaries of inter vivos and testamentary trusts and will apply to a beneficiary of a testamentary trust who does not already have the right of renunciation under IC 1971, 29–1–6–4."

We interpret this comment to mean IC 30–4–2–3 was intended in part to supplement the right of a beneficiary to disclaim an interest in a testamentary trust. The Study Commission comment seems to say a beneficiary may renounce under either 29–1–6–4 or 30–4–2–3, the latter trust provision being available when for some reason a timely disclaimer was not filed within the three months following the appointment of the personal representative as required by 29–1–6–4. Therefore, we hold that in the present case, Mrs. Newell had the option of disclaiming her interests under either IC 29–1–6–4 or IC 30–4–2–3.

■ However, we also hold that regardless of whether Mrs. Newell's disclaimer was timely submitted under either statute, a renunciation could have had no effect on the valuation of her interest for inheritance tax purposes. IC 29–1–6–4 expressly provided:

"[T]he succession so renounced shall be subject to the same Indiana inheritance tax that would have been assessed if there [had been] no renunciation."

While section 30–4–2–4 of the trust code provides the general rule that a renounced interest should be administered as if the beneficiary died prior to the effective date of the writing creating the trust, the Study Commission comments[4] show this section was not written to address the tax consequences of a disclaimer, but to modify the existing law relating to the acceleration of succeeding interests. Again, we doubt our legislature intended to single out beneficiaries of testamentary trusts as the only class of testamentary transferees able to avoid inheritance taxation by the filing of an effective disclaimer.[5]

■ Therefore, Mrs. Newell's interest in the testamentary trust should be valued without reference to any attempted disclaimer. As her interest is neither contingent nor limited in any true sense, the trial court erred in determining the "probable" distribution of trust property. Because of Mrs. Newell's unlimited power to request any sums she desires, her right to invade and exhaust the trust corpus, and her right to change the trustee, the value of all the trust property should be included in the assessment of her beneficial interest. Accordingly, the decision of the lower court is reversed and this cause is remanded for further proceedings consistent with this opinion.

MILLER, P. J., and YOUNG, J., concur.

---

4. The comments following 30–4–2–4 state:

"This section differs from the existing law under which, if the primary interest in the trust fails, succeeding interests are accelerated except when the terms and conditions of the will manifest a contrary intent."

5. We express no opinion as to whether a renunciation today under IC 30–4–2–3 would receive the same treatment in light of the fact that the inheritance tax proviso of IC 29–1–6–4 has been deleted by subsequent amendments. See *Estate of Wisely*, (1980) Ind.App., 402 N.E.2d 14.